UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
MOSES JEFFERIES IV AND BRIAN S.             )
JEFFERIES,                                  )
                                            )
            Plaintiffs,                     )
                                            )
    v.                                      )   Civil Action No. 04-1628 (PLF)
                                            )
GREATER SOUTHEAST COMMUNITY                 )
HOSPITAL GROUP TERM LIFE INSURANCE          )
PLAN, et al.,                               )
                                            )
            Defendants.                     )
_____)

MEMORANDUM OPINION

This matter is before the Court on the motions of defendants Lafayette Life Insurance Company ("Lafayette") and Excess Risk Underwriters, Inc. ("ERU") to dismiss all claims against them for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Upon consideration of defendants' motions and plaintiffs Moses Jefferies IV and Brian S. Jefferies' opposition, the Court concludes that the Lafayette's motion to dismiss must be denied and ERU's motion to dismiss must be granted in part and denied in part.

I.  BACKGROUND

Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(2)-(3), as beneficiaries of Anthony Spencer's

interests in defendant Greater Southeast Community Hospital Group Term Life Insurance Plan (the "Plan").[1]  See First Amended Complaint ("First Am. Compl.") at ¶15.  Plaintiffs claim supplemental life insurance benefits under the Plan as well as injunctive and other relief from Lafayette and ERU in their alleged fiduciary capacities, as group life insurer and insurance underwriters, respectively, with discretion over claims administration.  See First Am. Compl. at ¶¶ 9, 10, 38, 53.

Mr. Spencer was an employee of defendant Greater Southeast Community Hospital I (the "Hospital") from May 28, 2001 until August 8, 2002.  See First Am. Compl. at ¶ 11.[2]  As an employee of the Hospital, Mr. Spencer received basic life insurance that was paid for by his employer.  See First Am. Compl. at ¶ 13.  Plaintiffs allege that on November 19, 2001, Mr. Spencer "elected supplemental life insurance coverage in the amount of $60,000, and submitted the relevant form for such coverage to the Hospital on that date.  Premiums for employees' supplemental life insurance coverage were not paid by the Hospital, so the Hospital thereafter deducted the premium of $6.77 from each of Anthony's paychecks for the purported purpose of forwarding these amounts to Lafayette."  See First Am. Compl. at ¶ 14.  Plaintiffs and defendants agree that Lafayette never received these premiums.  See First Am. Compl. at ¶ 17; Lafayette Life Insurance Company's Mot. to Dismiss Plaintiff' First Amended Complaint ("Lafayette's Mot.") at 6-7; Excess Risk Underwriters, Inc.'s Mot. to Dismiss Plaintiffs' First Amended Complaint ("ERU's Mot.") at 9.

---

[1]    Mr. Spencer was plaintiffs' uncle.

[2]    Defendant Hospital's motion to withdraw its motion to dismiss was granted on February 4, 2005, and the Hospital filed an answer to plaintiffs' complaint on February 15, 2005.

Mr. Spencer died on August 24, 2002, and shortly thereafter plaintiffs sought to receive payment of Mr. Spencer's life insurance benefits. See First Am. Compl. at ¶¶18, 19.[3] The Hospital and Lafayette initially denied that Mr. Spencer was covered by any life insurance policies. See First. Am. Compl. at ¶ 21. On or about October 14, 2003, ERU informed plaintiffs that Mr. Spencer was a Plan participant. See First Am. Compl. at ¶ 20. On or about March 7, 2004, plaintiffs received payment of Mr. Spencer's basic life insurance proceeds, and plaintiff Brian Jefferies also received a letter from Lafayette stating that his claim for supplemental life insurance benefits was still under review. See First Am. Compl. at ¶ 25. On or about April 27, 2004, plaintiff Moses Jefferies received a letter from Lafayette denying the claim for supplemental life insurance benefits. See First. Am. Compl. at ¶ 26. Brian Jefferies did not receive a benefit denial letter. See Plaintiffs' Memorandum of Points and Authorities in Opposition to Lafayette Life Insurance Company's Motion to Dismiss Amended Complaint ("Pls.' Opp. to Lafayette's Mot.") at 11. Defendants state, in their respective motions to dismiss, that Mr. Spencer "never qualified for supplemental life insurance" because he elected such coverage after the 31-day automatic qualification period and failed to submit the "proof of insurability" that was required for election of supplemental life insurance coverage after this period. Lafayette's Mot. at 6; ERU's Mot. at 8.

---

[3] Delores Spencer-Jefferies, plaintiffs' mother and Mr. Spencer's sister, at all relevant times acted on behalf of plaintiffs as their personal representative and agent. (First Am. Compl. ¶ 6.)

## II.  LAFAYETTE'S MOTION TO DISMISS

A defendant's motion to dismiss for failure to state a claim will not be granted unless the plaintiff has alleged no facts that, if proven, would support a claim entitling plaintiff to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See, e.g., Razzoli v. Fed. Bureau of Prisons, 230 F.3d 371, 374 (D.C. Cir. 2000).  While the complaint is to be construed liberally in considering a motion to dismiss, the Court need not accept inferences drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  See Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### A.  Count One, for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

Lafayette asserts that plaintiffs' first count, for payment of supplemental life insurance benefits, should be dismissed as a "simple matter of contract interpretation" because Mr. Spencer "did not satisfy the requirements of the Policy that was [sic] part of the Plan." Lafayette's Mot. at 5.  Lafayette argues that because it "never received either the requisite proof of insurability from Mr. Spencer or any premiums from Mr. Spencer or from the Hospital for such supplemental coverage . . . [it] did not, and, by the terms of the Policy, could not provide Mr. Spencer with supplemental life insurance coverage."  Lafayette's Mot. at 6-7.

If Mr. Spencer, as plaintiffs allege, was reasonably led to believe that he was covered by supplemental life insurance coverage, equitable principles of estoppel and waiver

would apply. See Pls.' Opp. to Lafayette's Mot. at 7. Whether these principles apply to the Hospital, as Mr. Spencer's employer, or to Lafayette, as Mr. Spencer's group life insurer, or to both defendants depends, in part, on what Lafayette knew or had reason to know. See Eddy v. Colonial Life Ins. Co. of America, 919 F.2d 747, 750 (D.C. Cir. 1990). Plaintiffs allege that "Lafayette knew that the Hospital was having financial problems and took no remedial steps when the Hospital's premium check did not clear." Pls.' Opp. to Lafayette's Mot. at 6-7. These questions of fact cannot be resolved on a motion to dismiss.

*B. Count Four, for Injunction and Other Appropriate Equitable Relief Pursuant to 29 U.S.C. § 1132(a)(3)*

Lafayette moves to dismiss plaintiffs' fourth count, for injunctive and equitable relief, asserting that no fiduciary duty was due and no such duty breached because it was not "the Plan Administrator or a named fiduciary." Lafayette's Mot. at 10. Lafayette may nevertheless owe a fiduciary duty even if it fits neither of these two classifications. As the Supreme Court has said, "In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was *performing a fiduciary function*) when taking the action subject to the complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000) (emphasis added). See also Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987) ("whether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held"). Whether a party owes a fiduciary duty under ERISA is a mixed question of law and fact. See Reich v. Lancaster, 55 F.3d 1034, 1044 (5th Cir. 1995). Thus, whether Lafayette performed any

"fiduciary function" thus requires a factual determination of Lafayette's role in the Plan, a matter that cannot be decided on a motion to dismiss.

Plaintiffs have stated a claim that Lafayette is a fiduciary of the Plan within the meaning of ERISA because it had discretion over claims administration. See First. Am. Compl. at ¶ 9. Lafayette may refute the claim that it performed a fiduciary function by presenting evidence proving otherwise. Lafayette also argues that it is not responsible for "a failure over which it had no knowledge and no control," referring to the Hospital's possible failure to disclose to Mr. Spencer the proof of insurability requirement. Reply of Lafayette Life Insurance Company to Pls.' Opp. at 9. This argument hinges on a different set of facts, but facts nonetheless, including whether Lafayette knew or had reason to know that Mr. Spencer believed that he was covered by supplemental life insurance coverage. These factual questions also cannot be properly disposed of on this motion to dismiss.

C. *Exhaustion of Administrative Remedies*

Finally, Lafayette argues that plaintiffs' complaint should be dismissed in its entirety for failure to exhaust administrative remedies as required under ERISA. See Lafayette's Mot. at 11. Lafayette concedes that it responded to plaintiffs' request for information about Mr. Spencer's life insurance coverage with a letter instructing plaintiffs to contact "the ERISA plan administrator," and stating that Lafayette was not the plan administrator. Lafayette's Mot., Ex. B. 4.[4]  Plaintiffs state they then "contacted the Hospital numerous times for information regarding how to appeal the denial of the supplemental life insurance benefits, but the Hospital

---

[4] The letter also suggested that plaintiffs contact the "policyholder," that is, the deceased Mr. Spencer, "[f]or information as to who the ERISA appeal should be submitted and for further information regarding their [sic] ERISA appeal rights." Lafayette's Mot., Ex. B. 4.

refused to provide the information, and stated that if Plaintiffs wanted their benefits they should sue the Hospital." First Am. Compl. at ¶ 6.  Accepting their factual allegations as true, plaintiffs' administrative remedies were, for all practical purposes, exhausted.  Having had their requests for information dismissed by both Mr. Spencer's life insurance company and Mr. Spencer's employer, and having been told to sue to receive their benefits, plaintiffs had no reason to believe that further appeals to administrative remedies would be fruitful.  Plaintiffs do not "have a duty to try and try again until [they have] received correct and complete information." Eddy v. Colonial Life Ins. Co. of America, 919 F.2d at 752.

### III.  ERU'S MOTION TO DISMISS

*A. Count One, for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)*

Plaintiffs do not object to ERU's motion to dismiss Count One for supplemental life insurance benefits.  Plaintiffs' Memorandum of Points and Authorities in Opposition to Excess Risk Underwriters Company's [sic] Motion to Dismiss Amended Complaint at 1.  ERU is hereby dismissed from plaintiffs' Count One.

*B. Count Four, for Injunction and Other Appropriate Equitable Relief Pursuant to 29 U.S.C. § 1132(a)(3)*

ERU moves to dismiss plaintiffs' claim of breach of fiduciary duty on the same theory as that used by Lafayette.  Because plaintiffs allege that ERU was a claims administrator and thus a fiduciary of the Plan, the analysis in Section (II)(B) above applies.

*C. Exhaustion of Administrative Remedies*

ERU moves to dismiss plaintiffs' entire complaint for failure to exhaust administrative remedies on the same theory as that used by Lafayette. Because plaintiffs allege that ERU was a claims administrator and thus a fiduciary of the Plan, the analysis in (II)(C) above applies.

An Order consistent with this Memorandum Opinion shall issue this same day.

SO ORDERED.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: December 30, 2005